IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNESTO PU SACVIN,

      Petitioner,

v.                                 No. 2:25-cv-01031-KG-JFR

MARY DE ANDA-YBARRA, et al.,

      Respondents.

<u>MEMORANDUM OPINION AND ORDER</u>

      This matter is before the Court on Ernesto Pu Sacvin's Petition for a Writ of Habeas Corpus, Doc. 1, and the Government's Response, Doc. 7. The Court acknowledges that Mr. Pu Sacvin has not filed a reply, so he may submit any objections to this Order. Because Mr. Pu Sacvin's challenge presents a purely legal question, the Court declines to hold a hearing, *see* 28 U.S.C. § 2243, and grants his petition for the reasons below.

*I.*    *Background*

      Mr. Pu Sacvin entered the United States in 2006 and lives in Reston, Virginia with his wife and three children. Doc. 1 at 10. He is the beneficiary of an approved I-130 visa petition filed by his permanent resident spouse and has a pending EOIR-42B application for cancellation of removal before an Immigration Court. Doc. 1 at 9–11.

      Immigration and Customs Enforcement ("ICE") detained Mr. Pu Sacvin on September 10, 2025, near Washington, D.C., and presently holds him at the Otero County Processing Center. Doc. 1 at 11. The Department of Homeland Security ("DHS") initiated removal proceedings in the Chaparral Immigration Court under 8 U.S.C. § 1229(a), charging Mr. Pu Sacvin as removable under § 1182(a)(6)(A)(i) for entering the United States without admission

or parole.  Doc. 1 at 11.  ICE issued a custody determination ordering that Mr. Pu Sacvin remain detained without the option for bond or conditional release.  Doc. 1 at 11.

Mr. Pu Sacvin filed the present petition under 28 U.S.C. § 2241 on October 17, 2025. Doc. 1 at 10.  He argues that "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply" to his detention because he "resid[ed] in the United States prior to" apprehension. Doc. 1 at 12.  Mr. Pu Sacvin asserts that, instead, § 1226(a) governs, and therefore continued detention "without a bond redetermination hearing…violates his right to due process" under *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Doc. 1 at 12.

In its response, the Government argues that Mr. Pu Sacvin's claim is barred for failure to exhaust administrative remedies; Mr. Pu Sacvin is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2); and, if a bond hearing is held, Mr. Pu Sacvin bears the burden of demonstrating eligibility for release.  Doc. 7 at 6, 8–10.

II.    *Standard of Review*

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement."  *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973).  Habeas corpus review is available under § 2241 if a noncitizen is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see also Zadvydas*, 533 U.S. at 687.

The Immigration Nationality Act ("INA") "contemplates two detention regimes for noncitizens pending removal proceedings."  *Salazar v. Dedos*, 2025 WL 2676729, at *3 (D.N.M.); *see Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).  The first detention regime provides that when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted," the noncitizen "shall be detained" for removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  This provision "mandates detention" and affords no

bond hearing. *Salazar*, 2025 WL 2676729, at *3. The second detention regime authorizes the arrest and detention "on a warrant issued by the Attorney General" of noncitizens "pending a decision on whether [they are] to be removed." 8 U.S.C. § 1226(a). "Under federal regulations, noncitizens detained under" this second detention regime "are entitled to individualized bond hearings at the outset of detention." *Salazar*, 2025 WL 2676729, at *3 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). At the bond hearing, "the burden is on the noncitizen to demonstrate that their 'release would not pose a danger to property or persons, and that [they are] likely to appear for any future proceeding.'" *Id.* at *6 (quoting 8 C.F.R. § 236.1(c)(8)).

III.    *Analysis*

For the reasons below, the Court finds that (A) exhaustion does not bar Mr. Pu Sacvin's habeas claim, (B) § 1226 governs his detention, and (C) the proper remedy is a bond hearing where the Government bears the burden of proof.

       *A.*    *Exhaustion does not bar Mr. Pu Sacvin's claims.*

Before turning to the merits of Mr. Pu Sacvin's habeas petition, the Court addresses the Government's argument that Mr. Pu Sacvin has failed to exhaust his administrative remedies. A party may not seek federal judicial review until the party pursues "relief…available from [the] administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). "The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief." *Cantrall v. Chester*, 454 F. App'x 679, 681 (10th Cir. 2012). The Tenth Circuit has recognized a "narrow exception to the exhaustion requirement" where "a petitioner can demonstrate that exhaustion is futile." *Garza v. Davis*, 596 F.3d 1198, 1203–04 (10th Cir. 2010).

Here, Mr. Pu Sacvin requests that the Court order a bond hearing under § 1226(a), which is the proper administrative remedy. *See Salazar*, 2025 WL 2676729, at *3; *Perez v. Francis*,

2025 WL 3110459, at *3 (S.D.N.Y.).  Mr. Pu Sacvin was never provided an opportunity to request such a hearing.  Doc. 1 at 11.  Furthermore, in publishing *Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025), the Board of Immigration Appeals ("BIA") "adopted the legal interpretation" that categorically "considers anyone arrested within the United States and charged with being inadmissible" to be subject to detention under 8 U.S.C. § 1225(b)(2)(A). *Mosqueda v. Noem*, 2025 WL 2591530, at *1, *7 (C.D. Cal.).  Under *Hurtado*, Immigration Judges ("IJs") lack jurisdiction to provide § 1226(a) bond hearings to individuals in Mr. Pu Sacvin's position, rendering any attempt to seek relief directly from the agency futile.  *Id.* at *7 (Until the "BIA no longer applies a policy that likely violates federal law, the circumstances do not present a need for requiring prudential exhaustion"); *see also Salazar*, 2025 WL 2676729, at *3 n.3 (same); *Romero v. Hyde*, 2025 WL 2403827, at *5–8 (D. Mass.) (same).

The Government contends that, by filing a habeas petition, Mr. Pu Sacvin "circumvent[s] the U.S. Immigration Court."  Doc. 7 at 9.  Not so.  Mr. Pu Sacvin seeks immediate release only if he is not afforded "a bond hearing under § 1226(a)" before an IJ—invoking, not avoiding, the administrative process.  Doc. 1 at 3.  The Government's cases are inapposite.  Unlike Mr. Pu Sacvin, the petitioners in *Castillo Lachapel v. Joyce* and *Guzman v. Joyce* sought judicial relief without first pursuing a bond hearing.  786 F. Supp. 3d 860, 865 (S.D.N.Y. June 16, 2025); 786 F. Supp. 3d 865, 870 (S.D.N.Y. June 17, 2025).

B.    *Section 1226 governs Mr. Pu Sacvin's detention*

This case is among a growing number of challenges to the Government's policy of reclassifying long-term noncitizen residents in the United States as individuals "seeking admission" under 8 U.S.C. § 1225.  Historically, "[t]he line drawn…is that [§] 1225 governs detention of non-citizens 'seeking admission into the country,' whereas [§] 1226 governs

detention of non-citizens 'already in the country.'"  *Martinez v. Hyde*, 2025 WL 2084238, at *8

(D. Mass.) (citing *Jennings*, 583 U.S. at 288–89).  Recently, however, ICE has detained long-

term residents under § 1225(b)(2)(A), thereby subjecting them to mandatory detention.  *See*

*Romero*, 2025 WL 2403827, at *1 (collecting cases).

       Consistent with the majority of district courts to address the issue, this Court finds that

§ 1226 governs here.  *See Salazar*, 2025 WL 2676729, at *3; *Nava Hernandez v. Baltazar*, 2025

WL 2996643, at *7 n.3 (D. Colo.) (collecting cases).  The Court begins with the plain text and

structure of §§ 1225 and 1226.  Section 1225(a)(1) defines an "applicant for admission" as a

noncitizen "who has not been admitted *or* who arrives in the United States" (emphasis added).

In contrast, § 1225(b)(2)(A)'s detention mandate applies only to noncitizens "*seeking* admission"

(emphasis added).  The statute consistently differentiates between the broader category of

"applicants for admission" and the narrower subset "seeking admission."[1]  Noncitizens "seeking

admission" are those who have not "effected an entry" into the United States.  *DHS v.*

*Thuraissigiam*, 591 U.S. 103, 140 (2020).  Noncitizens who entered the country years earlier are

not considered to be "seeking admission," and therefore fall under § 1226 rather than

§ 1225(b)(2)(A).  *See Nava Hernandez*, 2025 WL 2996643, at *5 ("For a noncitizen to be

deemed 'seeking admission,' they must be currently taking active steps… to seek lawful entry

into the U.S."); *Loa Caballero v. Baltazar*, 2025 WL 2977650, at *6 (D. Colo.) (same); *Lopez-*

*Campos v. Raycraft*, 2025 WL 2496379, at *6 (E.D. Mich.) (same).

       Under this framework, § 1226 governs Mr. Pu Sacvin's detention.  Mr. Pu Sacvin entered

the United States in 2006 and has lived here since.  Doc. 1 at 10.  ICE arrested him almost

---

[1] For example, § 1225(a)(3) refers to "aliens…who are applicants for admission *or* otherwise
seeking admission" (emphasis added).

twenty years after his initial entry and did not apprehend him at or near the border. Doc. 1 at 10.

Accordingly, § 1225's mandatory detention provision "does not apply" because Mr. Pu Sacvin

"already effected an entry" into the United States by living here for decades. *Nava Hernandez*,

2025 WL 2996643, at *5; *see also Salazar*, 2025 WL 2676729, at *4.

The Government's reading of § 1225 contradicts the statute's plain text. The

Government argues that the "broad language" of § 1225(b)(2)(A) encompasses Mr. Pu Sacvin

within its mandatory detention provision. Doc. 7 at 8. This interpretation collapses the statute's

deliberate distinction between an "applicant for admission" and an "alien seeking admission."

§ 1225 (b)(2)(A). As discussed above, only the latter falls within § 1225(b)(2)(A)'s mandatory

detention scheme.

The Government relies heavily on *Hurtado*, 29 I. & N. Dec., a nonbinding agency

decision that this Court declines to follow. The agency's interpretation carries only the "power

to persuade," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024), and most district

courts have rejected *Hurtado* as inconsistent with the INA's text. *See, e.g.*, *Singh v. Lyons*, 2025

WL 2932635, at *2 (E.D. Va.); *J.U. v. Maldonado*, 2025 WL 2772765, at *7 (E.D.N.Y); *Patel v.

Crowley*, 2025 WL 2996787, at *9 (N.D. Ill.). Given the overwhelming contrary authority,

*Hurtado* represents a minority view that does not control here.

    C.    *The remedy is a bond hearing where the Government bears the burden of proof.*

Finally, the proper habeas remedy is a prompt bond hearing at which the Government

must prove, by clear and convincing evidence, that Mr. Pu Sacvin is a flight risk or danger to the

community. Although "under normal circumstances, the burden" at a § 1226 hearing "is on the

noncitizen" to show that detention is unwarranted, Mr. Pu Sacvin's "unlawful[] detention[] in

violation of his constitutional rights" shifts that burden to the Government. *Salazar*, 2025 WL

2676729, at *6.  This Court joins most other district courts in concluding that a noncitizen's "strong private interest in being free from civil detention" outweighs the Government's comparatively minimal burden to justify custody.  *Id.* (collecting cases).

IV.    *Conclusion*

For the reasons above, the Court grants Mr. Pu Sacvin's Petition for Writ of Habeas Corpus, Doc. 1, and orders the Government to provide him with a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge within seven days of the date of this Order.  The Government shall bear the burden of justifying Mr. Pu Sacvin's continued detention by clear and convincing evidence.  The Court also orders the Government to file a status report within ten days of this Order to certify compliance.  The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.  If Mr. Pu Sacvin has not received a lawful bond hearing within seven days, this Court orders that he be immediately released.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.